IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Westhaven Group, LLC, | Case No. 3:05 CV 7350 |
|                      Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Auto-Owners Insurance Co., | |
|                      Defendant. | |

This matter is before the Court on cross-Motions for Summary Judgment (Docket Nos. 20 and 21). Plaintiff, the Westhaven Group, LLC ("Westhaven") filed a Complaint against Defendant Auto-Owners Insurance Co. (Owners) seeking coverage under an insurance policy. The parties have stipulated (Docket No. 19) to a Record which includes a Land Installment Contract (Exhibit A) dated June 19, 2003 between Westhaven Group, LLC (Seller) and Kimberly Morton (Buyer); and an Insurance Contract, Policy No. 44-539-314-00.

Westhaven claims coverage for damage to the property insured under the Owners' policy. Westhaven is a real estate company that purchases, refurbishes and sells houses under land installment contracts. The land installment contracts are short-term contracts financed by Westhaven which in turn balloon at the end of the contract term. Prior to the due date, the buyer of the house refinances with a bank or other financial institution (Brueggemeier Affidavit ¶2).

The underlying contract in this case was signed on June 19, 2003 by Kimberly Morton for the purchase of a house located at 5008 Jolley Road in Sylvania, Ohio. Under the terms of the contract, Morton was to pay monthly installments for two years. Just prior to her purchase, Westhaven had refurbished the home in the normal course of its business (Brueggemeier Affidavit ¶3).

The Land Installment Contract required Morton to maintain insurance on the property and list Westhaven as a secured party. Morton complied by purchasing a home owner's insurance policy from Owners and listing Westhaven as a secured party on the policy (Brueggemeier Affidavit ¶4).

A year later, in June 2004, Westhaven learned that the house sustained significant damage. Specifically, the house had been stripped of its drywall, piping and other fixtures as well as an outdoor deck. The "damage" was caused by the Mortons (Brueggemeier Affidavit ¶5). Westhaven did not know or consent to the damage caused by the Mortons who indicated they intended to restore the house back to its original condition (Brueggemeier Affidavit ¶6). Despite these representations by the Mortons, the property remains in its "damaged" condition (Brueggemeier Affidavit ¶7). Westhaven thereafter filed a claim with Owners which denied the claim in June 2005 (Brueggemeier Affidavit ¶8 and Exhibits C-D to the Stipulated Record). Owners denied the claim because the policy covered "accidental direct physical loss," but determined that the "damage" was the result of attempts by the Mortons to remodel the home and therefore the loss was not considered "vandalism".

Westhaven claims that its right to coverage is not affected by the Mortons' conduct, or misconduct, but rather turns on the mortgage clause contained in the policy which establishes a separate contract of insurance between Westhaven and Owners. The dispute in this case then turns on the policy language between Westhaven (Mortgagee) and Owners.

There are generally two types of loss payable clauses found in insurance contracts. The first, the simple mortgage clause, typically states that the proceeds of the policy shall be paid first to the mortgagee as its interest may appear. Under such a clause, the mortgagee is simply an appointee of the insured and its right of recovery is only as great as that of the insured. The second type of loss

2

payable clause is the standard mortgage clause. This clause is broader and effectively states that coverage will not be invalidated by any act or neglect of the insured.

The primary issue before the Court is whether the language of the mortgage clause in the Owners' policy is a simply loss payable mortgage clause or a standard/union mortgage clause. The language is as follows:

> If we deny your claim, such denial will not apply to a valid claim of the mortgagee, provided the mortgagee [complies with certain policy terms regarding notice and other procedural matters]. Such denial will not apply to a valid claim of the mortgagee, provided the mortgagee . . . pays any premium due under this policy that you or the mortgagor has neglected to pay.

It is undisputed that the policy here includes the mortgagee's reciprocal promise to pay premiums in the event the policy holder does not. This feature is one of the hallmarks of a standard mortgage clause. *Nationwide v. Hunt*, 488 S.E.2d 339, 343 (1997). In *Hunt*, the court reviewed the coverage for a mortgagee noting at 341:

> A mortgagee's ability to recover largely depends on the type of mortgagee clause used in the insurance contract. There are two major categories of mortgagee clauses: (1) loss-payable and (2) standard clauses.
>
> \* \* \*
>
> The difference between the two types of clauses has been explained in this way: The loss-payable clause merely identifies the person who may collect the proceeds. (citation omitted) Under such a clause, the mortgagee stands in the insured's shoes and is usually subject to the same defenses; however, with the standard form, the mortgagee may become liable to pay the premium to the insurance company, and in return, is freed from policy defenses which the company may have used against the insured.

In *Hunt*, the court found the policy at issue contained a standard mortgage clause with language nearly identical to the language in the Owners' policy. *Id.* at 343. The insurance company in that case argued, as does Owners in this case, that the provision is not a standard clause because it does not contain precisely the same wording of such clauses: specifically, that the interest of the

3

mortgagee shall not be invalidated by any act or neglect of the mortgagor. *Id.* The court in *Hunt* disagreed noting that the wording in the clause included: "If we deny your claim, that denial will not apply to a valid claim of the mortgagee." *Id.* As in *Hunt*, this Court agrees that the language is substantially the same as the typical standard clause and is further supported by very similar language in the ISO form. To hold otherwise would, in the words of *Hunt*, "elevate form over substance." *Id., see also Auto Owners v. Newman*, 851 S.W.2d 22, 26-27 (1993).

The underlying facts in *Homesavings v. Continental Insurance Co.*, 104 Cal. Rptr.2d 790 (2001), are very similar to the instant case. A mortgagee brought an action against an insurer to recover for loss from the landowner's demolition of the residence and incomplete renovation. *Id.* at 792-93. In *Homesavings*, recovery turned on whether the clause was a simple loss-payable or a standard mortgage clause. *See id.* at 794. The court noted that a standard clause arises when there is a lien holder's promise to pay premiums and, in return for this liability, the lien holder is freed from the policy defenses which the insured might have against the owner. *Id.* at 795. The court went on to note that while some standard loss-payable clauses explicitly provide that the mortgagee shall be free of the defenses available against the named insured, that was not a prerequisite. *Id.* at 796. In that case, there was no such explicit language but rather the general language much like the instant case. The court also noted that the ISO standard mortgagee clause was very similar to the mortgagee clause in that case and that courts in other jurisdictions have found such a clause to be a standard loss-payable clause:

> So far as we are aware, every court to consider the matter has found the ISO-type clause to be a standard loss payable clause. (citations omitted) . . . we reject Continental's attempts to distinguish those cases based on a minor difference in language found in a single sentence in both policies.

*Id.* at 797-98.

4

Owners argues that because this policy contains no waiver of policy defenses triggered by the conduct of the Mortgagor, Westhaven stands in no better position than the Mortons. This would require the Court to ignore the **independent** obligation of Westhaven to make premiums and the language providing that denial of a claim by Morton "will not apply to a valid claim" of Westhaven.

Owners' primary reliance is on the case of *Van Reken v. Michigan Basic Property Insurance Ass.*, 2001 WL 664579 (Mich. App. 2001). Again, in a case factually similar to the case at hand, plaintiffs were listed under a loss-payable clause in a land contract. *Id.* at *1. Plaintiffs discovered after the property was vacated that the interior of the home had been stripped of carpeting, fixtures and numerous items and it was eventually discovered that one of the owners had caused the damage. *Id.* The court found the clause to be an ordinary loss-payable clause and therefore plaintiffs had no greater right to the insurance proceeds than did the vendees. *Id.* at *2. In other words, the mortgagee was not protected from loss based on the act or neglect of the insured. Again, the key turns on whether the clause was a loss-payable clause or a standard mortgage. The court found that because the clause did not contain language specifically providing coverage for mortgagee despite any act or neglect of the mortgagor that it did not operate as a standard loss-payable clause. *Id.* This opinion is clearly in the minority and is contrary to not only cases from other jurisdictions but also from Michigan as well.

When all the provisions of the policy are read together, the mortgage clause is a standard mortgage clause notwithstanding the absence of specific words stating "coverage will not be invalidated because of any act or neglect of the mortgagor." *See Zanco v. Michgian Mut. Ins. Co.,*, 11 Ohio St.3d 114, 115-16 (1984) (holding that insurance contracts must be examined in their entirety). The policy contains other hallmarks of a standard mortgage clause including Westhaven's obligation to pay premiums. Further, in cases of doubt, a clause providing for payment of proceeds

5

to a mortgagee is construed as a standard mortgage clause. 4 Couch on Insurance §65:10 (3rd Ed. 2006).

Having concluded that the provision is a standard mortgage clause, Westhaven must next defeat Owners' claim that Westhaven's loss falls within one or more of several policy exclusions. These exclusions are for (1) vandalism, (2) faulty contracting and remodeling and (3) intentional acts. Westhaven alleges vandalism by the Mortons to the property and seeks coverage; Owners claims the loss "cannot be considered vandalism because there was no malicious intent" (Docket No. 19-1, Exhibit D). The state of the Record before the Court precludes the determination as a matter of law whether any one or more of these exclusions apply. For example, if the property is vacant more than thirty days before the loss, the vandalism exclusion does not apply. Knowledge by Westhaven of the "remodeling" effort by the Mortons may be relevant to the faulty contracting exclusion and the intentional acts exclusion. Therefore, the applicability of any one or more of these exclusions can only be determined with a supplemented record or at trial with the parties offering evidence.

For all the above reasons, Plaintiff Westhaven's Motion for Summary Judgment (Docket No. 20) is granted in part and denied in part; Defendant Owners' Motion for Summary Judgment (Docket No. 21) is denied.

IT IS SO ORDERED.

                                                       s/ *Jack Zouhary*
                                                 JACK ZOUHARY
                                                 U. S. DISTRICT JUDGE

                                                 September 22, 2006